UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY WALKER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-08-530 |
| | § | |
| INSTITUTIONAL DIVISION OF TEXAS DEPARTMENT OF CRIMINAL JUSTICE, *et al.*, | § § § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

**I.     Introduction**

Pending before the Court is the defendants', Michael Upshaw, Leonard Laskowski, Jason Pfleiderer and Matthew Bazan, III, second motion for summary judgment (Docket Entry No. 113).[1]  The plaintiffs, Mary Walker and Michael Spencer, individually and as personal representatives of the estate of Michael Dewayne Walker ("Walker"), filed a response (Docket Entry No. 114).  After having carefully reviewed the motion, the response, the record and the applicable law, the Court denies the defendants' motion.

**II.    Factual Background**

This case concerns a wrongful death claim brought by Walker's parents after he died while incarcerated in a Texas Department of Criminal Justice ("TDCJ") facility.  The facts underlying the complaint have been set forth previously in a Memorandum Opinion and Order entered July 10, 2009 (Docket Entry No. 80), and will not be repeated at length here.  In short,

---

[1] For reasons explained within, Bazan was not party to these defendants' first motion for summary judgment. At earlier stages of this litigation, other defendants included the Institutional Division of the Texas Department of Criminal Justice ("TDCJ"), Brad Livingston as TDCJ Executive Director, Jason Heaton as Warden of the Ferguson unit of TDCJ, Ralph Bales as the Safe Prison Program Manager of TDCJ, Tony O'Hare as Duty Warden of the Ferguson unit and other unnamed and unknown TDCJ employees, in both their individual and official capacities. None of those entities remain parties to this dispute.

Walker was in custody at the Ferguson unit of TDCJ until July 13, 2006, when he was strangled and kicked to death by his cellmate, Wilbert "Peanut" Hamilton, during an assault that took place shortly after the two were assigned to share a cell on July 12, 2006.

On July 10, 2009, the Court denied certain defendants' first motion for summary judgment and granted the plaintiffs' motion for a continuance to conduct additional discovery. After the defendants' interlocutory appeal, based on Eleventh Amendment immunity and qualified immunity grounds, the Fifth Circuit dismissed a portion of the plaintiffs' complaint and remanded a portion for consideration against Upshaw, Laskowski and Pfleiderer in their personal capacities.[2] When Walker died, Upshaw was the Warden of the Ferguson unit, although he was at home when Walker's body was discovered. Laskowski was the officer at the picket booth on the floor of the Hamilton/Walker cell. Pfleiderer was the rover charged with inspecting the Hamilton/Walker floor the night of July 12, 2006, until he was relieved by Bazan.

Bazan was not a part of the interlocutory appeal because he had not yet been served. He filed a summary judgment motion during the pendency of the appeal, which was denied without prejudice immediately after the Fifth Circuit entered its decision. The Fifth Circuit's remand specified that the remaining defendants should be deposed to see whether they had subjective awareness of the danger posed to Walker, and if so, whether they were deliberately indifferent to that danger, in violation of Walker's Eighth Amendment right to be free from cruel and unusual punishment.

---

[2] *See Walker v. Livingston, et al.*, No. 09-20508, 2010 WL 2465035 (5th Cir. June 17, 2010) (*per curiam*) (Docket Entry No. 99).

### III.     Contentions of the Parties

####    A.     The Defendants' Contentions

The defendants contend that they are entitled to qualified immunity. They assert that the law was not clearly established that sex offenders such as Walker had to be segregated from the prison population, nor that offenders were prohibited from having boots in the housing area. They maintain that, prior to Walker's death, no defendant knew of and/or disregarded an excessive risk to Walker's health or safety. They claim to have been unaware of any potential problems between Walker and Hamilton.

####    B.     The Plaintiffs' Contentions

The plaintiffs contend that a reasonable jury could find the defendants liable in their personal capacities for violating 42 U.S.C. § 1983 by being deliberately indifferent to Walker's situation. They assert that Hamilton's propensity for violence was well known within the prison, and that his attack on Walker was audible and occurred over several hours. They also claim that Warden Upshaw failed to properly train his staff, as evidenced by the fact that they put him into Hamilton's cell, despite the fact that Hamilton was outspokenly threatening to any potential cell mate.[3]

### IV.     Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those

---

[3] The plaintiffs originally filed multiple other claims under 42 U.S.C. § 1983 and supplemental survival and wrongful death claims under Texas state law against a greater number of defendants, in both their individual and official capacities. However, none of those claims remain after the interlocutory appeal.

portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light

most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.     Analysis and Discussion

The Court denies the defendants' motion for summary judgment. After the parties completed more extensive discovery, genuine issues of material fact remain disputed regarding whether the defendants violated Walker's Eighth Amendment rights. More specifically, these fact issues concern whether the defendants were subjectively aware of the danger that Walker faced, and whether they were deliberately indifferent to that danger. Thus, summary judgment is inappropriate.

The defendants, in their individual capacities, have asserted the defense of qualified immunity. *See Hafer v. Melo*, 502 U.S. 21, 25-26 (1991). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal

citations omitted). Qualified immunity is an affirmative defense to federal law claims. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). It is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Swint v. Chambers of County Com'n*, 514 U.S. 35, 42 (1995) (internal quotation omitted).

For that reason, whether the qualified immunity defense applies is a threshold legal question to be decided by the Court. *Mitchell v. Forsythe*, 472 U.S. 511, 527-29 (1985). The Court considers the alleged facts in the light most favorable to the plaintiffs to determine whether the defendants' conduct violated a constitutional right. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2005) (internal citations omitted). If officers of reasonable competence could disagree as to whether the alleged conduct violated the plaintiffs' rights, immunity remains intact. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Prison officials have a duty under the Eighth Amendment to "provide humane conditions of confinement," which includes ensuring that inmates are protected "from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Therefore, a prison official can be held liable if he "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.[4] However, merely negligent conduct cannot meet the standard for liability under Section 1983.

---

[4] Prison officials have a duty to protect inmates who, due to their incarceration, are placed in a relatively defenseless position:
> Having incarcerated "persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct," . . . having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. . . . Prison conditions may be "restrictive and even harsh," . . . but gratuitously allowing the beating or rape of one prisoner by another serves no "legitimate penological objectiv[e], . . . any more than it squares with "evolving standards of decency."

*Farmer*, 511 U.S. at 833-34 (internal citations omitted).

*Daniels v. Williams*, 474 U.S. 327, 331-34 (1986) (as applied to the Fourteenth Amendment); *Davidson v. Cannon*, 474 U.S. 344, 347 (1984) (also regarding the Fourteenth Amendment).

The Court determines that sufficient evidence exists from which a reasonable factfinder could determine that the defendants violated Walker's Eighth Amendment rights. Therefore, their qualified immunity defense fails. On appeal, the Fifth Circuit noted that the defendants' alleged inaction could have violated Walker's right to be free from cruel and unusual punishment if they were deliberately indifferent to Walker's rights, as determined by a subjective test. *See also Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639-40, 643 (5th Cir. 1996) (*en banc*). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. To prove that an official is subjectively aware of a risk to inmate safety, a plaintiff may rely on circumstantial evidence indicating that the official must have known about the risk. *Hope v. Pelzer*, 536 U.S. 730, 738-39 (2002).[5]

Hamilton had a well-known propensity for violence. The parties dispute the length of Hamilton's attack, with conflicting accounts ranging from a few minutes to several hours. It is also unclear whether the defendants heard or could have heard the attack while performing their supposedly routine checks of the facility, and thus whether they knew or should have known that Walker faced a substantial risk of serious harm. Because those fact issues are unresolved, it is also unresolved whether the defendants remained deliberately indifferent to the danger that Walker faced. As for Upshaw, it is unclear whether he failed to adequately train the prison staff

---

[5] For example, when "an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Farmer*, 511 U.S. at 842-43 (internal quotations omitted).

under his supervision. Suits against supervisors in their individual capacities can result in their personal liability if failure to train an employee results in deliberate indifference to the rights of prisoners. *City of Canton v. Harris*, 489 U.S. 378, 388-90 (1989). The plaintiffs have offered expert testimony that Upshaw failed to adequately train and supervise his staff.

In light of Hamilton's well-documented history of violence, mental instability and routine need for solitary confinement, the conflicting accounts of the length and volume of the fatal beating, the defendants' qualified immunity defense fails. Accordingly, the Court denies the defendants' motion,[6] lifts the stay that it entered on August 29, 2011 (Docket Entry No. 118), and resets this case for its original docket call day of September 12, 2011.[7]

### VI. Conclusion

Based on the foregoing discussion, the Court DENIES the defendants' motion.

It is so **ORDERED**.

SIGNED at Houston, Texas this 7th day of September, 2011.

_____
Kenneth M. Hoyt
United States District Judge

---

[6] For the same reasons cited in the Court's prior Memorandum Opinion and Order (Docket Entry No. 80), as altered by Fifth Circuit's opinion in this case (Docket Entry No. 99), the Court determines that the only remaining claim against Bazan is the potential Eighth Amendment violation. Thus, the Court dismisses the plaintiffs' Texas constitutional claims and official capacity claims for monetary damages against Bazan.

[7] Although ruling on the defendants' second motion for summary judgment, the Court is disquieted by the thought that the defendants might appeal this ruling as well. Unfortunately, the law currently permits this dilatory tactic. A man has been killed, and the longer this case remains in the pretrial stages, the more likely that evidence can get stale or lost, that memories can fade, and thus resolution of potential liability can become lost in technical procedures.